# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## FOURTH DIVISION

ROSE M. SCUTERI,

                       Plaintiff,

    v.

PFIZER, INC.,
PHARMACIA CORPORATION
(a/k/a PHARMACIA PHARMACEUTICAL CORPORATION)
and DOES 1-10,

                  Defendants.

Case Type:

Court File No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff ROSE M. SCUTERI, by and through her attorneys, CELLINO & BARNES, P.C., and for her complaint against Defendants, alleges upon information and belief the following:

## PRELIMINARY ALLEGATIONS

1.    Jurisdiction of this Court is founded upon 28 U.S.C. §1331 and 18 U.S.C. §1964 for personal injury -- derived harms impacting cognizable property interest.

2.    Plaintiff ROSE M. SCUTERI is a citizen of the United States and the State of New York, currently residing in the County of Monroe.

3.    Defendant PFIZER INC. ("PFIZER") is a Delaware Corporation with its principal place of business in New York, New York. At all times herein mentioned, PFIZER designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter

referred to as CELEBREX (also known as CELECOXIB), a controlled substance, nationwide and in the State of California.

4.     Defendant PHARMACIA CORPORATION (also known as PHARMACIA PHARMACEUTICAL CORPORATION) (hereinafter "PHARMACIA") is a Delaware Corporation with its principal place of business in New Jersey. At all times herein mentioned, PHARMACIA has been engaged in the business of marketing and selling CELEBREX nationwide and in the State of California. In 2003, PFIZER acquired PHARMACIA for nearly $60 billion because of CELEBREX.

5.     Defendant DOES 1-10, at all times herein mentioned, along with Defendant Pharmacia, were agents and/or employees of every other Defendant in doing the acts herein alleged, and was, at all times, acting within the purpose and scope of said agency and employment and all of said acts and conduct were ratified and approved by said Defendants.

6.     Plaintiff is currently a resident of Rochester, New York.

7.     Plaintiff's physician prescribed CELEBREX beginning in July, 1999 and she ingested CELEBREX at least until December, 2004 for relief of pain. Plaintiff ingested these products and sustained serious injury, debilitating stroke.

8.     As a direct, proximate and legal result of the ingestion of CELEBREX, Plaintiff has suffered injures.  All of Plaintiff's general damages are a sum within the jurisdiction of this Court.

9.     As a direct, proximate and legal result of the ingestions of CELEBREX, Plaintiff was required to, and did, employ physicians and surgeons to examine, treat, and care for her, and therefore Plaintiff has incurred medical and incidental expenses.

10.     As a further direct, proximate and legal result of the ingestion of CELEBREX, Plaintiff was prevented from future earnings and thereby sustained loss of earnings.

11.    CELEBREX is among a groups of drugs called non-steroidal anti-inflammatory drugs ("NSAID") prescribed to relieve the pain, swelling and stiffness of osteoarthritis and adult rheumatoid arthritis.   NSAIDs reduce pain by blocking the body's production of pain transmission enzymes called cyclooxygenase ("COX").   There are two forms of COX enzymes, COX-1 and COX-2.

12.    It is generally accepted in the medical community that blocking the COX-1 enzyme hampers the body's ability to repair gastric tissue and causes harmful gastrointestinal side-effects, including stomach ulceration and bleeding.

13.    It is generally accepted in the medical community that blocking the COX-2 enzyme lowers levels of prostacyclin, a substance responsible for preventing the formation of blood clots, and causes serious cardiovascular events, such as heart attack and stroke.

14.    Traditional NSAIDs, like aspirin and ibuprofen, reduce pain sensations by inhibiting both COX-1 and COX-2 enzymes simultaneously.  As would be expected, traditional NSAIDs cause ulcers in the stomach and intestines.

15.    Defendants set out to remedy the gastrointestinal risks of traditional NSAIDs by developing "selective" inhibitors that would block only COX-2 production, thus, supposedly, reducing the risk of stomach ulcers.   In making this decision, Defendants intentionally or recklessly disregarded current medical knowledge that selective COX-2 inhibition lowers prostacyclin levels, causes blood clots, and gives rise to serious cardiovascular events, such as heart attack and stroke.

16.    PHARMACIA completed Phase I, II and III trials for CELEBREX by 1998.  During these trials they learned that selectively inhibiting the COX-2 enzyme lowers prostacyclin levels, caused blood clots, and gives rise to serious cardiovascular events, such as heart attack and stroke.

17.    Despite knowing that CELEBREX poses serious cardiovascular risks for anyone who took the drugs, Defendants decided to push CELEBREX to market on claimed improvements of gastrointestinal safety while downplaying the dangers associated with blood clotting.  To justify their position, Defendants funded a significant clinical trial to demonstrate that CELEBREX had greater gastrointestinal safety than traditional NSAIDs, the Celecoxib Long—Term Arthritis Safety Study ("CLASS.")

18.    The CLASS trial was a long-term, double-blind study of gastrointestinal toxicity in 8,059 patients taking CELEBREX, ibuprofen, or diclofenac to treat arthritis.  Patients with heart problems were allowed to participate in the CLASS trial, and were permitted to take low doses of aspirin to reduce the risk they would suffer and adverse cardiovascular event during the study.  Further, Defendants intentionally diverted attention from CELEBREX's cardiovascular risks by providing the bare minimum of information on the issue: the CLASS trial did not publish any cardiovascular event data.

19.    When the CLASS study was completed, the results were reported to the U.S. Food and Drug Administration's Arthritis Drugs Advisory Committee ("the Committee") as part of a request to exempt CELEBREX from including a gastrointestinal safety warning in its package insert.  After reviewing the CLASS results, the Committee concluded that patients taking CELEBREX had not experienced fewer gastrointestinal complications that those taking traditional NSAIDs.  Without any proof of enhanced safety, the Committee recommended that the CELEBREX package insert contain the same gastrointestinal warnings as traditional NSAIDs, and advised further studies to assess the risk of COX-2 inhibitors when taken with aspirin.  Since the CLASS study did not report any cardiovascular event data and the Defendants were not seeking an exemption from any cardiovascular warning requirement (because traditional NSAIDs do not cause cardiovascular problems), the Committee did not consider the cardiovascular safety of CELEBREX.

4

20.    Without having performed any significant tests on cardiovascular safety, the Defendants filed a new drug approval application with the FDA in August 1998.    After an expedited review that addressed the CLASS gastrointestinal safety results did not touch on any cardiovascular safety issues, the FDA approved CELEBREX for the relief of osteoarthritis and adult rheumatoid arthritis in December 1998.    CELEBREX was released for sale in the United States in February 1999.

21.    Defendants widely advertised CELEBREX as effective pain relief for osteoarthritis and adult rheumatoid arthritis, with fewer adverse side effects than other similar drugs.  In conveying this marketing message, Defendants intentionally and uniformly hid from consumers that CELEBREX affects the clotting mechanism of human blood and can cause serious cardiovascular events, such as heart attacks and strokes.

22.    From 1999 to 2003, the Defendants spent over $400 million on direct-to-consumer advertising for CELEBREX.    In the nine months ending in September 2004, worldwide sales of CELEBREX were $2.29 billion, accounting for 6% of Pfizer's total sales of $47.59 billion.

23.    The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently sought to create the image and impression that the use of CELEBREX was safe for human use, had fewer side effects and adverse reactions than other NSAIDs.

24.    Despite the effectiveness of their advertising campaigns, Defendants' uniform failure to disclose CELEBREX's risk of cardiovascular injury did not quell concerns about selective COX-2 inhibitors in the medical community.    In 1997, the link between COX-2 inhibition, prostacyclin levels and blood clotting was receiving sporadic attention in medical journals.  In 1998, independent doctors established a link between selective COX-2 inhibitors and increased blood clotting, and suggested that these drugs would cause in increase in cardiovascular events.  These doctors suggested that these drugs would have to be monitored

for cardiovascular complications.  In light of the blockbuster sales of CELEBREX and the related increase in serious cardiovascular events among patients taking such drugs, the link between selective COX-2 inhibition and cardiovascular problems received increased attention.

25.    The cardiovascular safety of CELEBREX was directly challenged for the first time in August 2001 when independent doctors from the Cleveland Clinic published a meta-analysis of the CLASS trial that concluded these drugs posed an increase risk of adverse cardiovascular events compared to naproxen, a traditional NSAID.  These doctors, specifically concerned with the increased number of heart attacks experienced by patients taking selective COX-2 inhibitors, urged Defendants to conduct trials to assess the cardiovascular risks of CELEBREX.

26.    Over the next eight months, many pre-eminent doctors and medical organizations continued to discuss the cardiovascular risk of CELEBREX.  The vast majority regardless of whether they were on Defendants' payrolls, agree that cardiovascular risk factors should be considered in deciding whether to prescribe CELEBREX, and that well designed, comprehensive studies were needed to assess the effects of selective COX-2 inhibitors on human heart function.   Despite the mounting evidence that CELEBREX causes or exacerbates clot-related disorders, Defendants have continued to issue uniformly misleading advertisements and promotional materials that tout CELEBREX as being safe and more effective than traditional NSAIDs for all patients without regard for cardiovascular risks.

27.    The FDA issued three Warning Letters to SEARLE, in October 1999, April 2000, and November 2000, all finding that SEARLE was unlawfully making false or misleading statements concerning the safety and/or efficacy of CELEBREX.  The November 2000 letter cited two direct-to-consumer television advertisements that overstated the efficacy of CELEBREX and the FDA ordered that SEARLE immediately cease distribution of the misleading ads.

28.    In February 2001, the FDA issued a Warning Letter to PHARMACIA stating that promotional activities for marketing CELEBREX were unlawful because they were ("false, lacking in fair balance, or otherwise misleading.") The FDA found that CELEBREX had been promoted for unapproved uses, in unapproved dosing regimens, and that the marketers had made unsupportable claims that CELEBREX was safer and more effective than other NSAIDs.

29.    Despite knowing the cardiovascular risks associated with CELEBREX and having received numerous warnings from the FDA for downplaying risks associated with CELEBREX, Defendants also sent "Dear Patient" letters from a prescription database of thousands of consumers in August 2001 that minimized the risk of "safety issues, specifically heart attacks and strokes" associated with CELEBREX while emphasizing that these drugs were "innovative, effective and safe" treatment options for osteoarthritis, without any mention of cardiovascular risks, such as heart attacks and strokes.

30.    On December 17, 2004, the FDA released a statement on the halting of a clinical trial by the National Cancer Institute (NCI) and Pfizer investigating a new use of CELEBREX to prevent colon polyps. The FDA halted the trial because of an increased risk of cardiovascular (CV) events in patients taking CELEBREX versus those taking placebo. On December 23, 2004, the FDA announced that it was requiring an evaluation of all prevention studies that involved the COX-2 selective agents CELEBREX and Bextra (Valdecoxib) to ensure that adequate precautions were implemented in the studies and that local Institutional Review Boards reevaluate them in light of the new evidence that these drugs may increase the risk of heart attacks and strokes.

31.    On April 7, 2005, the FDA announced a series of important changes pertaining to the marketing of the non-steroidal anti-inflammatory class of drugs, including COS-2 selective and prescription and nonprescription (over-the-counter (OTC)) non-selective NSAID medications. The FDA asked Pfizer to include a boxed warning in the CELEBREX label and to

revise their labeling to include a Medication Guide for patients to help make them aware of the potential for cardiovascular and gastrointestinal adverse events associated with the use of this class of drugs.

32.    If Plaintiff had known the risks and dangers associated with CELEBREX, Plaintiff would not have taken CELEBREX and consequently would not have been subject to its adverse effects.

33.    The physician who prescribed CELEBREX to Plaintiff relied on the representations made by the Defendants, and each of them, prior to the date of prescribing CELEBREX for use.   The physician relied on the representations regarding the safety of CELEBREX, and would not have recommended for use or prescribed CELEBREX if he/she had known the true fact regarding the safety of CELEBREX.

34.    Prior to the date upon which the aforesaid product was prescribed to Plaintiff the Defendants knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose.   The dangers of this product included, by way of example, the likelihood of developing blood clots causing heart attacks and strokes. The Defendants, and each of them, failed to take appropriate action to cure the nature of these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

35.    The Defendants thereby acted with malice toward Plaintiff who accordingly request that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for its conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future.   The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendant.

## AS AND FOR A FIRST CAUSE OF ACTION

### [Strict Liability in Tort: Failure to Warn]

36.    Plaintiff incorporates by reference Paragraphs 1 through 35 as if fully set forth herein and further alleges follows.

37.    At all times herein mentioned the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by Defendants and ingested by Plaintiff ROSE M. SCUTERI.  The aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings, regarding all possible adverse side effects associated with the use of CELEBREX, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects.  The product was also defective in that the product manufactured and distributed differed from the manufacturer's intended results.  These defects caused serious injury to the user when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended by Defendants.

38.    The Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein.

39.    The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in pain relief, involved substantial dangers not readily recognizable by the ordinary user of the product.   The Defendants, each of them, failed to warm of the known or knowable likelihood of injury including but not limited to the likelihood the user would develop cardiovascular disease, such as heart attacks and strokes.

40.    The CELEBREX designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors by

Defendants, and each of them, was further defective due to inadequate post-marketing warning or instruction because, after Defendants, and each of them, knew or should have known of the risks of injury from CELEBREX, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to cardiovascular risks, such as heart attack and stroke.

41.    Plaintiff did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects.  These defects caused the herein described injuries to Plaintiff ROSE M. SCUTERI.

42.    The Defendants, and each of them, knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

43.    Plaintiff neither knew, nor had reason to know, at the time of the use of the aforesaid products, or at any time prior thereto, of the existence of the foregoing described defect.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## AS AND FOR A SECOND CAUSE OF ACTION

### [Strict Products Liability Pursuant to Restatement Second of Torts §402A (1965)]

44.    Plaintiff incorporates by reference Paragraphs 1 through 43 as if fully set forth herein and further alleges follows.

45.    The CELEBREX manufactured and/or supplied by Defendants, and each of them, herein was placed into the stream of commerce by these Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

46.    Alternatively, the CELEBREX manufactured and/or supplied by Defendants, and each of them, was defective in design or formulation in that when it was placed in the stream of

commerce, it was unreasonably dangerous and it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of NSAIDs.

47.    The CELEBREX manufactured and/or supplied by Defendants, and each of them, was defective due to inadequate warning or instruction because the Defendants and each of them knew or should have known that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

48.    The CELEBREX manufactured and/or supplied by Defendants, and each of them, was defective due to inadequate warning and/or inadequate testing.

49.    The CELEBREX manufactured and/or supplied by Defendants, and each of them, was defective due to inadequate post-marketing warnings and instructions, because the Defendant knew or should have known of the risk of injury from CELEBREX, however they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

50.    As a proximate and legal result of the defective and unreasonably dangerous condition of these products manufactured and/or supplied by Defendants, and each of them, Plaintiff was caused to suffer the herein described injuries.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## AS AND FOR A THIRD CAUSE OF ACTION

### [Negligence]

51.    Plaintiff incorporates by reference Paragraphs 1 through 50 as if fully set forth herein and further alleges follows.

52.    At all times herein mentioned, Defendants, and each of them, had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

53.     At all times herein mentioned, Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

54.     The Defendants, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted and supplied the aforesaid products, that it was dangerous and unsafe for the use and purpose for which it was intended.

55.     The Defendants, and each of them, were aware of the probable consequences of the aforesaid conduct.   Despite the fact that Defendants knew or should have known that CELEBREX caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above.   Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of Plaintiff ROSE M. SCUTERI.

56.     As a result of the carelessness and negligence of Defendants, and each of them, the aforesaid product caused Plaintiff to thereby sustain injuries as herein alleged.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Against the Manufacturing Defendants)

### [Breach of Implied Warranty]

57.     Plaintiff incorporates by reference Paragraphs 1 through 56 as if fully set forth herein and further alleges follows.

58.     At all times mentioned herein, Defendants, and each of them, manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was prescribed to Plaintiff Defendants impliedly warranted to Plaintiff and to her agents, that the product was of merchantable quality and safe for the use for which it was intended.

59.     Plaintiff and her agents relied on the skill and judgment of the Defendants, and each of them, in using the aforesaid product.

60.     The product was unsafe for its intended use, and it was not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user.   The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.  The aforesaid product did cause the Plaintiff to sustain injures as herein alleged.

61.     After Plaintiff was made aware that  injuries were a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## AS AND FOR A FIFTH CAUSE OF ACTION

### [Breach of Express Warranty]

62.     Plaintiff incorporates by reference Paragraphs 1 through 61 as if fully set forth herein and further alleges follows.

63.     The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, construction, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of the foresaid product was expressly warranted to be safe for use by Plaintiff and other members of the general public.

64.    At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be in all respects, fit, safe and effective and proper for such purpose.  The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

65.    Plaintiff and her physicians reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid product.  The warranty and representations were untrue in that the product caused severe injury to Plaintiff and was unsafe and, therefore, unsuited for the use for which it was intended.  The aforesaid product could and did thereby cause Plaintiff  to sustain injuries as herein alleged.

66.    As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendants were notified of the breach of said warranty.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## AS AND FOR A SIXTH CAUSE OF ACTION

### [Fraud]

67.    Plaintiff incorporates by reference Paragraphs 1 through 66 as if fully set forth herein and further alleges follows.

68.    The Defendants falsely, fraudulently and in violation of State law represented to Plaintiff, her physicians and members of the general public that the aforesaid product was safe for use to aid in relieving pain.  The representations by said Defendants were, in fact, false.  The true facts include, but are not limited to the fact that the aforesaid products were not safe for said purpose and were, in fact, dangerous to the health and body of Plaintiff ROSE M. SCUTERI and to her property interests impacted by personal injuries.

69.     The representations by said Defendants were, in fact, false.  The true facts were that the products were not adequately tested, that there were frequent, sever, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to cardiovascular risks, that the products caused injuries including but not limited to blood clots, heart attacks, strokes, and death, and Defendants did not disclose or warn users and their physicians about the known risk of injury in using the products.  Defendants misrepresented the safety of the products, represented that the products marketed were safe for use in pain relief and concealed warnings of the known or knowable risks of injury in using the products.

70.     When said Defendants made these representations, they knew that they were false.  Defendants made said representations with the intent to defraud and deceive Plaintiff with the intent to induce her to act in the manner herein alleged.

71.     At the time Defendants made the aforesaid representations, and at the time Plaintiff  took the actions herein alleged.  Plaintiff and  physicians were ignorant of the falsity of these representations and reasonably believed them to be true.   In reliance upon said representations, Plaintiff was induced to, and did, use the aforesaid product as herein described.  If Plaintiff had known the actual facts, she would not have taken such action.  The reliance of Plaintiff and her physicians upon Defendants' representations was justified because said representations were made by individuals and entities that appeared to be in a position to know the true facts.

72.     As a result of Defendants' fraud and deceit, Plaintiff was caused to sustain the herein described injuries.

73.     In doing the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future.  Said wrongful conduct was done with the

advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### [Fraud by Concealment]

74.     Plaintiff incorporates by reference Paragraphs 1 through 73 as if fully set forth herein and further alleges follows.

75.     At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff and to her physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and how likely it was to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated.  Defendants made the affirmative representations as set forth above to Plaintiff her physicians and the general public prior to the date CELEBREX was prescribed to Plaintiff while concealing the following material facts.

76.     At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff and to her physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but not limited to blood clots, heart attacks, strokes, and death.

77.     At all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff's physicians, and therefore Plaintiff with the intent to defraud as herein alleged.

78.     At all times herein mentioned, neither Plaintiff nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product to aid in the relief of pain.

79.     As a result of the concealment or suppression of the facts set forth above, Plaintiff sustained injuries as hereinafter set forth.

80.     In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

81.     That at all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff 's, physicians and therefore Plaintiff with the intent to defraud Plaintiff as herein alleged.

82.     At all times herein mentioned, neither Plaintiff nor  physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, that CELEBREX would not have been prescribed to Plaintiff and she would not have ingested it.

83.     As a result of the concealment or suppression of the facts set forth above, Plaintiff and she would not have ingested it.

84.     In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff's, , is entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to Defendants wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## AS AND FOR A EIGHTH CAUSE OF ACTION

### [Negligent Misrepresentation]

85.     Plaintiff incorporates by reference Paragraphs 1 through 84 as if fully set forth herein and further alleges follows.

86.     The Defendants had an absolute duty to disclose the true facts regarding the safety of CELEBREX as the only entities capable of knowing and reporting the true facts

regarding the safety and testing of CELEBREX.  Furthermore, Defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

87.    The Defendants made the aforesaid representations with no reasonable ground for believing them to be true.  They did not have accurate or sufficient information concerning these representations.  Furthermore, Defendants were aware that without such information they could not accurately make the aforesaid representation.

88.    The aforesaid representations were made to the physician prescribing CELEBREX prior to the date it was prescribed to Plaintiff,  and the physician relied on those representations about the safety of CELEBREX when prescribing CELEBREX to Plaintiff ROSE M. SCUTERI.

89.    At the time the aforesaid representations were made, Defendants concealed from Plaintiff  and her physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

90.    The aforesaid representations were made by Defendants with the intent to induce Plaintiff  to act in the manner herein alleged, that is, to ingest CELEBREX as prescribed.

91.    The Defendants falsely represented to Plaintiff her physicians and members of the general public, that the aforesaid product was safe for use to aid in pain relief.  The representations by said Defendants were, in fact, false.  The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff,  and there by caused injury to Plaintiff ROSE M. SCUTERI.

92.    The Defendants made the aforesaid representations with no reasonable grounds for believing them to be true.  They did not have accurate or sufficient information concerning these representations.  Furthermore, Defendants were aware that without such information it could not accurately make the aforesaid representations.

93.     At the time Defendants made the aforesaid representations, and at the time CELEBREX was prescribed to Plaintiff, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true.   In reliance upon said representations, Plaintiff ingested CELEBREX as herein described.   If Plaintiff had known the actual facts, she would not have taken such action.   The reliance of Plaintiff and her physicians upon Defendants' representations was justified because said representations were made by individuals and entities that appeared to be in a position to know the true facts.

94.     As a result of Defendants' false representations and concealment, Plaintiff was caused to sustain the herein described injuries.

95.     As a proximate result of the Defendants' misrepresentations, Plaintiff has suffered an ascertainable loss in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a.     On the First Cause of Action in an amount to be proven at trial including compensatory damages;

b.     On the Second Cause of Action in an amount to be proven at trial including compensatory damages;

c.     On the Third Cause of Action in an amount to be proven at trial including compensatory damages;

d.     On the Fourth Cause of Action in an amount to be proven at trial including compensatory damages;

e.     On the Fifth Cause of Action in an amount to be proven at trial including compensatory damages;

f.     On the Sixth Cause of Action in an amount to be proven at trial including compensatory damages;

g.     On the Seventh Cause of Action in an amount to be proven at trial including compensatory damages;

h.    On the Eighth Cause of Action in an amount to be proven at trial including compensatory damages;

i.    The attorneys' fees, costs and disbursements of this action and legal interest on all damages from date of demand until paid, and such other and further relief as the Court deems just, equitable and proper.

### JURY TRIAL DEMAND

Plaintiff ROSE M. SCUTERI respectfully demands trial by jury on all issues presented.

DATED:    Buffalo, New York
          June 2, 2008

**CELLINO & BARNES, P.C.**                    **TREPANIER & MACGILLIS P.A.**

By: _____          By: _____
Brian A. Goldstein, Esq.                       James C. MacGillis, Esq.
Attorney New York Reg. No. 2715019             Attorney Reg. No. 283812
Direct Dial: 716-566-2269                      Direct Dial: 612-455-0503
brian.goldstein@cellinoandbarnes.com           jmacgillis@trepanierlaw.com


CELLINO & BARNES, P.C.                         TREPANIER & MACGILLIS P.A.
17 Court Street, 7th Floor                     8000 Flour Exchange Building
Buffalo, New York 14202-3290                   310 Fourth Avenue South
Telephone: 716-854-2020                        Minneapolis, Minnesota 55415
Facsimile: 716-854-6291                        Telephone: 612-455-0500
                                               Facsimile: 612-455-0501

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| **(a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Rose M. Scuteri | Pfizer, Inc., Pharmacia Corp. and Does 1-10 |

**(b)** County of Residence of First Listed Plaintiff   Monroe
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
James MacGillis, Esq. 8000 Flour Exchange Bldg. 310 Fourth Ave,
Minneapolis, MN 55415

Attorneys (If Known)

## I. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity   (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## V. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☒ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Brief description of cause:
Product Liability

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE                DOCKET NUMBER

DATE   June 9, 2008
SIGNATURE OF ATTORNEY OF RECORD   James C. MacGillis

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____